# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **IBRAHIM KAHL**, | Case No. 3:19-cv-1480-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MULTNOMAH COUNTY, DAVID MAIN,** and **BRYAN SMITH**,[1] | |
| Defendants. | |

Christian Eickelberg, CHRISTIAN EICKELBERG, ATTORNEY AT LAW, LLC, 333 SW Taylor Street, Suite 300, Portland, OR 97204; and Drake Aehegma, DRAKE AEHEGMA, ATTORNEY AT LAW, LLC, 308 SW First Avenue, Suite 325, Portland, OR 97204. Of Attorneys for Plaintiff.

Lindsay A. Byrne and B. Andrew Jones, MULTNOMAH COUNTY ATTORNEY'S OFFICE, 501 SE Hawthorne Boulevard, Suite 500, Portland, OR 97214. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

On both July 18 and August 9, 2018, Multnomah County Probation Officer David Main (Main) arrested and caused to be jailed Plaintiff Ibrahim Kahl (Kahl) for alleged probation violations. Main, however, mistakenly believed that Kahl remained on probation when Kahl's probation had in fact ended on July 11, 2018. In this lawsuit, Kahl asserts that Defendants Main

---

[1] Kahl concedes that his claims against Bryan Smith should be dismissed.

and Multnomah County (the County) violated Kahl's civil rights under the Fourth, Fifth, and Fourteenth Amendments, made actionable under 42 U.S.C. § 1983. Kahl also alleges that Defendants are liable for common law negligence. Defendants have moved for summary judgment against all claims. For the reasons stated below, the Court grants Defendants' Motion for Summary Judgment.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

In 2016, Kahl pleaded guilty in Multnomah County Circuit Court in criminal case number 16CR14947 (the 2016 Case) to one count of attempted delivery of cocaine in violation of Oregon Revised Statutes (ORS) § 161.405(2)(c). On July 12, 2016, Multnomah County Circuit Court Judge Bronson D. James sentenced Kahl to two-years' probation. Kahl's probation

was scheduled to end on July 11, 2018. During the relevant portions of Kahl's probation, Main served as Kahl's probation officer.

On November 30, 2017, Kahl was arrested by Portland Police on a then-pending contempt warrant. In Kahl's vehicle, Portland Police found a firearm and a white substance they believed to be cocaine. The State, in what became case number 17CR79493 (the 2017 Case), filed criminal charges against Kahl for unlawful possession of cocaine in violation of ORS § 475.884, possession of a firearm as a felon in violation of ORS § 166.270, and possession of a loaded firearm in public in violation of a City of Portland ordinance. Main reported Kahl for probation violations in the 2016 Case arising from both Kahl's November 30th arrest and Kahl's failure to pay fines and fees associated with probation. During hearing on a December 13, 2017, the State declined to proceed on the 2016 Case probation violation. Multnomah County Circuit Court Judge Eric Bloch then entered an order stating:

> State is not proceeding on P[robation] V[iolation] allegations today. Release [Kahl] on [the 2016 Case] immediately. Track [the 2016 Case] with [the 2017 Case] for Presiding Call on 1/22/2018 at 9AM in [Room] 208.

Behre Decl., Ex. 4 (ECF 53) at 1.

In April 2018, Kahl was again arrested. The State, in what became case number 18CR28010 (the 2018 Case), charged Kahl with possession of cocaine. Main reported Kahl for probation violations in the 2016 Case arising from Kahl's April 2018 arrest. During a May 8, 2018 hearing on Kahl's probation violation in the 2016 Case, Multnomah County Circuit Judge Christopher Ramras ordered that Khal's probation continue and that Kahl spend ten days in jail. The parties agree that at no point did any court extend Kahl's probation in the 2016 Case. In the 2018 Case, meanwhile, the Multnomah County Circuit Court released Kahl pending trial but ordered him to wear a GPS device so that Main could monitor Kahl's location.

On July 10, 2018, the day before Kahl's probation in the 2016 Case was scheduled to end, Kahl and Main spoke both by telephone and in person at Kahl's home. Main asked Kahl to meet him at Main's office on July 17, 2018. Main states in a declaration that, during neither the July 10, 2018 telephone call nor the home visit, did Kahl "mention to [Main] that [Kahl] was no longer on supervision the following week." Main Decl. (ECF 47) at 8, ¶ 23. Kahl, however, alleges in his Third Amended Complaint (TAC) and his memorandum in opposition to Defendants' motion for summary judgment that he did tell Main that his supervision would conclude on July 11, 2018.

Kahl and Main next met on July 17. During that meeting, Kahl admitted to using several illegal drugs. Believing that Kahl's probation was still in effect and that Kahl's use of illegal drugs violated the terms of Kahl's probation, Main arrested Kahl. Kahl agreed not to contest the violation and received an administrative sanction of three-days' jail time and 30-days' GPS monitoring. Main sent a sanction report to both Multnomah County Circuit Court Judge Stephen K. Bushong and the Multnomah County District Attorney's Office. Main did not send the sanction report to Judge Ramras, the judge who presided over the 2016 Case. Neither Judge Bushong nor the district attorney replied to Main.

On August 9, 2018, a police officer recognized Kahl at a bowling alley in the presence of a known gang member. Kahl left the bowling alley after seeing the police officer. The police officer contacted Main, who followed Kahl by GPS and relayed Kahl's location to the officer. The officer pulled over Kahl's vehicle and arrested Kahl's for a probation violation. Kahl admitted to the violation, and Main imposed an administrative sanction of five-days' jail time and 30 days of GPS monitoring. Main sent a sanction report both to Judge James and the district attorney's office. Main did not send the sanction report to Judge Ramras.

Later that month, Kahl spoke with a different probation officer about having Kahl's GPS monitor removed following the dismissal of his 2018 Case. When the probation officer told Kahl that he was still subject to GPS monitoring for probation violations, Kahl replied that he was no longer on probation. The probation officer noted Kahl's remarks in the probation office's "shared" recordkeeping system.

Kahl reported to Main again on August 28. Main ordered Kahl to take a drug test. The drug test showed that Kahl had recently used cocaine, which Kahl denied. In his memorandum in opposition to Defendants' motion for summary judgment, Kahl asserts that he again told Main on August 28th that Kahl was no longer on probation.

On September 12, 2018, Kahl's defense attorney, Christopher Behre, sent an email to Main, asserting that Kahl's probation had ended on July 11, 2018. Main promptly asked his supervisor Bryan Smith and the district attorney's office about Kahl's probation status. Both Smith and the district attorney's office replied that they believed that Kahl remained on probation because of Judge Bloch's statement that the 2016 Case probation violations "should track" the 2017 Case.

On September 15, a Portland police officer detained Kahl at a nightclub for a suspected probation violation. The officer released Kahl, however, after he found no record showing that Kahl currently was on probation. The police officer and Main spoke soon after. On September 19, Main ordered Kahl to report to Main to discuss the nightclub incident, but Kahl refused, asserting again that his probation had ended. Two days later, Behre emailed the district attorney's office and Judge Ramras's staff seeking either confirmation that Kahl's probation had terminated or a hearing on Kahl's probation status. The district attorney's office responded that

their position was that Kahl remained on probation because of Judge Bloch's statement that the 2016 Case probation violations should track the 2017 Case.

On October 3, 2018, Main applied to Judge Ramras for an arrest warrant for Kahl based on Kahl's refusal to report to Main the prior month as directed. Judge Ramras did not issue the warrant. On October 15, Judge Ramras held a hearing on Kahl's probation status. On November 7, Judge Ramras ruled that Kahl's probation had expired on July 11, 2018, but Judge Ramras stated that whether Judge Bloch's order had extended Kahl's probation was "kind of complicated" and "not a simple thing." Jones Decl., Ex. 6 (ECF 46) at 4. Main closed the 2016 Case promptly after Judge Ramras's ruling.

## DISCUSSION

### A. Federal Law Claims

#### 1. Claims Against Main

Kahl alleges that Main violated Kahl's Fourth Amendment right to be free from unreasonable seizure and Fourteenth Amendment right to be free from deprivation of his liberty absent due process on July 18, 2018 and August 9, 2018 when Main had Kahl arrested and jailed as a sanction for probation violations. Kahl also alleges that Main violated Kahl's Fourteenth Amendment right to be free from deprivation of his liberty absent due process by continuing to supervise Kahl after his probation had elapsed. Main does not argue that he did not violate Kahl's constitutional rights but asserts that he is entitled to immunity—both qualified and absolute immunity—for his unconstitutional conduct. Because the Court finds that Main is entitled to qualified immunity, the Court declines to address Main's argument regarding absolute immunity. Main argues that he is entitled to qualified immunity because his belief that Kahl remained on probation after July 11, 2018 was reasonable, even if factually mistaken.

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014); *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227.

Qualified immunity shields officials for mistakes of fact as well as of law. *Pearson*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government

official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed question of law and fact.'") (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J. dissenting)). Thus, even when a right is clearly established, an official may be entitled to qualified immunity because the full contours of the right in the circumstances faced by the official were unclear. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar*, 137 S. Ct. at 1867. Put another way, "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Rodis v. City of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009), *cert. denied*, 558 U.S. 1110 (2010).

A plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). When considering whether qualified immunity applies, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

The Ninth Circuit has held that an officer who deprives an individual of the individual's liberty after the individual's lawful sentence has ended violates the individual's Fourteenth Amendment Due Process rights when the officer has notice that the individual's lawful sentence had expired and fails to investigate the circumstances of the individual's detention further. *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir. 1990). Because there is no evidence that

Main had notice that Kahl's lawful sentence expired before August 17, 2018,[2] Main can only be liable for his conduct before August 17, 2018 if he acted incompetently. After August 17, 2018, Main is liable only if he failed to further investigate the circumstances of Kahl's detention.

### a. Main's Conduct before August 17, 2018

Main acted mistakenly but not incompetently in continuing to supervise Kahl after July 11, 2018. Consider what Main knew between July 11 and August 17, 2018: Judge Bloch ordered Kahl's probation violations in the 2016 Case to "track" Kahl's 2017 Case; the 2017 Case was still pending; Kahl's 2016 Case remained active in the state court's electronic "E-court" system; Kahl agreed to report to Main on July 17; and Kahl did not mention that he was no longer on probation.[3] Based on this information, it was not unreasonable for Main to conclude that Kahl remained on probation past July 11th. The case to which Kahl's probation was tracked remained pending, and Kahl himself did not appear to believe that his probation had ended.

Later events likely strengthened Main's mistaken belief that Kahl remained on probation. Kahl not only appeared at the July 17th meeting but also admitted to using drugs and declined to contest the probation violation sanctions that Main imposed on Kahl. Kahl again agreed to report to Main after an arrest on August 9th, and Kahl again admitted to violating the terms of his probation and again declined to contest the sanctions that Main imposed. Main sent both sanction

---

[2] Kahl alleges in his TAC and asserts in his legal memorandum filed in opposition to Defendants' motion for summary judgment that he did tell Main that his probation had ended on July 11, 2018 during their July 10, 2018 meeting. Kahl, however, did not identify any *evidence* of this alleged statement. *See Celotex*, 477 U.S. at 324 (holding that a party seeking to defeat summary judgment must "go beyond the pleadings . . . [to] designated 'specific facts showing that there is a genuine issue for trial'") (quoting Fed. R. Civ. P. 56(e)); *see also* Fed. R. Civ. P. 56(c) (listing sources of support for a party's assertion of fact). Moreover, even after this issue was discussed during oral argument, Main never moved to supplement the record with a declaration to this effect.

[3] *See* n.2 *supra*.

reports to the district attorney's office and to two Circuit Judges (although, not the Circuit Judge who had presided over Kahl's probation violation), and Main heard nothing back.

On the other hand, the E-court system showed that Kahl's probation had ended on July 11, 2018. That same system, however, listed Kahl's 2016 Case as "active." Moreover, several other officials shared Main's mistaken belief that Judge Bloch's order had extended Kahl's probation. After Kahl challenged his probation status, Main shared with his supervisor and at least one assistant district attorney that the E-court system reported that Kahl's probation had ended on July 11, 2018. Both the supervisor and assistant district attorney, nevertheless, told Main that they believed that Kahl remained on probation based on Judge Bloch's order. Although Judge Ramras later concluded that Kahl's probation had ended on July 11, 2018, Judge Ramras stated that whether Judge Bloch's order had in fact extended Kahl's probation was "kind of complicated" and "not a simple thing." Jones Decl., Ex. 6 (ECF 46) at 4. That several other officials shared Main's mistaken belief, or at least found the mistaken belief understandable, further supports the Court's finding here that Main's belief was not unreasonable.[4]

In opposing Defendants' motion for summary judgment, Kahl argues that Main's belief that Judge Bloch's order that Kahl's alleged probation violations in the 2016 Case "track" the 2017 Case extended Kahl's probation is unreasonable under Oregon law. Kahl begins with Oregon statutes, noting that the term "track" appears nowhere in the Oregon legislation. That is true, but Oregon statutes do permit judges to "impose and execute a sentence of probation on [a]

---

[4] Kahl argues that what Judge Ramras, Main's supervisor, or the district attorney believed is not relevant to whether Main's belief that Kahl remained on probation was reasonable. Kahl also argues, however, that a police officer's decision not to arrest Kahl for a probation violation after the officer reviewed the E-court system and saw that Kahl's probation had terminated on July 11, 2018 shows that Main's belief was unreasonable. It is unclear why Kahl believes that one person's belief about Kahl's probation is relevant to whether Main's belief was reasonable, but others' beliefs are not.

defendant for a definite or indefinite period of not more than five years." ORS § 137.010(4). And probation may "be continued or extended" at "the discretion of the court." ORS § 137.545(1)(a). Main believed that Judge Bloch's tracking order was an exercise of Judge Bloch's discretion to extend Kahl's probation, and the Court concludes that such a belief is reasonable.

Kahl also argues that the Oregon Court of Appeals' decision in *State v. Vanlieu*, 251 Or. App. 361 (2012), reveals that Main's actions were unreasonable. In *Vanlieu*, the Oregon Court of Appeals held that a trial court's "show cause" order did not extend the defendant's probation and therefore the trial court could not sanction the defendant for conduct that occurred after the defendant's original probation date had passed, despite the show-cause order. *Id.* at 368. *Vanlieu* explained that, if a defendant's term of probation could be extended by "the mere filing of a show-cause order"—essentially, an invitation to reply to the State's allegations of probation violations—then the state could extend the term of a defendant's probation by filing "meritless" probation violation allegations. *Id.* at 370. "The legislature," the Oregon Court of Appeals explained, "contemplated" that a defendant's probation would be extended only by a deliberate act of a trial court. *Id.*

*Vanlieu*, however, does not show that Main's belief that Judge Bloch's tracking order extended Kahl's probation was unreasonable. *Vanlieu* merely requires a deliberate judicial act to extend a defendant's probation. It is not obvious why it would be unreasonable for Main to believe Judge Bloch's "tracking" order was such a deliberate judicial act. The Oregon Court of Appeals did not list acceptable deliberate judicial acts; it simply states that a show-cause order was not one.[5] Moreover, the reasons given by the Oregon Court of Appeals for concluding that a

---

[5] Indeed, *Vanlieu* was careful to limit its holding to the "particular circumstances" of that case. *Id.* at 368.

show-cause order was not a deliberate judicial act do not directly apply to a tracking order. Because a show-cause order is merely an invitation to respond to the state's allegations of probation violations, those orders are prosecution-driven; they are not the product of judicial deliberation and decision. Judge Bloch's tracking order, however, was an express order made by Judge Bloch after his deliberate consideration of the information before him. Thus, even if Main were aware of *Vanlieu*, that decision would not have made it obvious to Main that tracking orders could not extend a term of probation.

Main's mistaken belief that Judge Bloch's tracking order extended Kahl's probation was reasonable, even if ultimately mistaken. Because Main's mistake of fact was reasonable, Main is entitled to qualified immunity for his conduct supervising and detaining Main between July 11, 2018 and August 17, 2018.

### b. Main's Conduct after August 17, 2018

On August 17, 2018, Kahl spoke with a different probation officer about having his GPS monitor removed following the dismissal of his 2018 Case. During this meeting, Kahl told the probation officer that his probation had ended on July 10, 2018. The probation officer noted Kahl's remark in a "shared" recordkeeping system for the probation office. This entry represents the first instance potentially notifying Main that Kahl's probation had ended.[6] An officer who deprives an individual of the individual's liberty after the individual's lawful sentence has ended violates the individual's Fourteenth Amendment Due Process rights when the officer has *notice* that the individual's lawful sentence has expired and fails reasonably to investigate further the

---

[6] Because the Court must draw all reasonable inferences in favor of the nonmoving party, the Court will assume that Main saw the entry in the probation office's recordkeeping system noting that *Kahl* believed that his probation terminated on July 11, 2018. Main, however, had no reason to question whether Kahl remained on probation on August 28, 2018, when Kahl reported to Main for a supervision meeting and told Main that Kahl believed that his probation had ended.

circumstances of the individual's detention. *See Haygood*, 769 F.2d at 1355; *see also Alexander v. Perrill*, 916 F.2d 1392, 1395 (9th Cir. 1990) (denying qualified immunity to prison officials who "did nothing to inquire into or investigate [the plaintiff's] complaints" that his good time credits were being improperly calculated).

Main is entitled to qualified immunity for his conduct after August 17, 2018 because he made a reasonable investigation after receiving notice that Kahl's lawful sentence may have expired. Promptly after Kahl's public defender sent an email to Main about Kahl's probation on September 12, 2018, Main: (1) checked Kahl's E-court file again and saw that Kahl's 2016 Case remained active; (2) spoke to Main's supervisor about Kahl's probation and learned that the supervisor shared Main's understanding of the effect of Judge Bloch's tracking order; and (3) contacted the district attorney's office, who also shared Main's understanding of the effect of Judge Bloch's tracking order. *Contra Alexander*, 916 F.2d at 1395 ("[I]f you just sit around and don't do anything [to investigate a prisoner's claim that he has been detained beyond the length of his lawful sentence], you do run a chance of being responsible.") Main did not arrest or enter any sanctions against Kahl after August 17, 2018. Because Main reasonably investigated the status of Kahl's probation after he had reason to doubt the lawfulness of Kahl's continued supervision, Main is entitled to qualified immunity.

## 2. Claims Against Multnomah County

Defendants argue that Kahl has not established *Monell* liability because he has not shown that Multnomah County has a custom or policy of detaining individuals who are not on probation for violating probation, that Multnomah County offered constitutionally deficient training to probation officers, or that a policymaker for Multnomah County ratified Main's actions.

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, "[a]

municipality is subject to suit under § 1983 only 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096-97 (9th Cir. 2013) (quoting *City of St. Louis v. Parprotnik*, 485 U.S. 112, 121 (1988)). Municipal liability may exist without any formal policy permitting the challenged conduct where the municipality has a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

In narrow circumstances, a municipality's failure to train its employees may be considered a policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom under § 1983."). Indeed, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (simplified). In still rarer instances, however, the duties of a specific employee make the need for certain training obvious. *City of Canton*, 489 U.S. at 390. The classic example being that the duties of police officers to chase fleeing felons makes the need for training on constitutional use of force by officers obvious. *Id.* at 390 n.10.

Finally, a municipality may be liable for an employee's unconstitutional conduct when the municipality ratifies the employee's conduct. *See Gillette v. Delmore*, 979 F.3d 1342, 1348 (9th Cir. 1992). To prevail on a ratification theory, Kahl must show both that Main's decision was "cast in the form of a policy statement" and that a supervisor *with policy making authority* expressly approved of the decision. *Id.*

Kahl fails to establish the County's liability. Kahl does not point to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the County. *See Gravelet-Blondin*, 728 F.3d at 1096-97 (quoting *Parprotnik*, 485 U.S. at 121). Nor is there any evidence that the County has a custom, *see Trevino*, 99 F.3d at 918, of relying on "tracking" orders to continue to supervise individuals on probation even after the individual's probation has terminated. The County trains probation officers that, when a probation violation hearing tracks a criminal proceeding, the probation violation will be resolved at the same time as the criminal proceeding. That training, however, describes a "tracking" order's effect on scheduling.

Nor can Kahl establish a failure to train. Kahl must point to a "pattern of similar constitutional violations," *Connick*, 131 S. Ct. 1350, 1360 (2011), yet undisputed evidence in the record reveals that there is no example of anything like this happening before in Multnomah County. Finally, Kahl's ratification theory fails because undisputed evidence in the record shows that Smith, the County employee who Kahl argues ratified Main's decision to continue supervising Kahl, lacks policymaking authority himself. *See Gillette*, 979 F.3d at 1348; *see* Smith Decl. (ECF 48) at 2 ("Policies for [Multnomah County Department of Community Justice] are set at a level above mine . . . .").

## B.  State Law Claims

Defendants argue that they are entitled to summary judgment on Kahl's state law claims both because Kahl failed to provide timely notice of his claim to the County and because they are entitled to apparent authority immunity under Oregon law. Public bodies and their employees are immune from liability for "[a]ny claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation

been constitutional, valid and applicable, unless such act was done or mitted in bad faith or with malice." ORS § 30.265(6)(f).

As explained above, Main's belief that Judge Bloch's tracking order extended Kahl's probation was mistaken but reasonable. There is no evidence that Main acted with bad faith or malice. Thus, Main and the County are entitled to apparent authority immunity for Kahl's state law claims. Because Defendants are entitled to apparent authority immunity for Kahl's state law claims, the Court need not address whether Kahl provided timely notice of his claim

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment (ECF 45).

**IT IS SO ORDERED**.

DATED this 10th day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge